IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01992-CMA-MJW

SHAWN D.  ALLEN,

Plaintiff,

v.

CORRECTIONS CORP.  OF AMERICA (A PRIVATE FOR PROFIT CORPORATION)
EMPLOYEES,
J. GRAY,
N.  ARREDONDO,
LT.  PHILLIPS, and
C.  BLAKE,

Defendants.

---

## RECOMMENDATION ON
### DEFENDANTS [sic] MOTION FOR SUMMARY JUDGMENT (Docket No. 82)
### and
### PLAINTIFFS [sic] CROSS-MOTION FOR SUMMARY JUDGMENT (Docket No. 87)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**


This matter was referred to this court pursuant to an Order Referring Case issued

on September 14, 2010, by Judge Christine M.  Arguello.  (Docket No. 16).

## PLAINTIFF'S ALLEGATIONS

The pro se plaintiff, Shawn D. Allen, filed the Prisoner Complaint (Docket No. 4)

when he was incarcerated.  He has recently been released.  He alleges the following in

that pleading, as slightly amended to delete a few statements (see Docket Nos. 24 and

36).

**Claim One.**  After filing numerous complaints against defendant Health Service

2

Administrator Jodi Gray, plaintiff decided to name her in a civil action and thus

submitted a Notice of Intent on May 6, 2009.  At the time Gray received the Notice of

Intent, she had just learned that plaintiff was in court suing the Kit Carson Correctional

Center ("KCCC") Warden as well as Gray's subordinate, Northrup.  Before bringing that

case, plaintiff had threatened to sue Gray with those co-workers.  Gray was clearly

angry with plaintiff and filed "the utterly asinine charge of 'threats' against" the plaintiff.

(Docket No. 4 at 5).  "Gray plucked a word or phrase out of its couch so it could be

perverted to imply something other than its intended denotation and direct meaning."

(Docket No. 4 at 5).  Plaintiff had no history of threats during his over eight years of

incarceration.  Gray filed the charge of "threats" against the plaintiff in retaliation for

plaintiff's protected acts of threatening to sue her, his litigation against the Warden and

Northrup, his numerous complaints, and his Notice of Intent.  Plaintiff's conviction on

that charge of "threats" caused his security points to be raised and possibly hindered his

parole and halfway house consideration.  Furthermore, Gray's actions were sufficient to

deter a person of ordinary firmness from exercising his constitutional rights and

constitute a First Amendment violation (access to the court and retaliation), an equal

protection violation, and a substantive due process violation.

**Claim Two.**  Plaintiff also filed a "plethora of complaints" against defendant

KCCC case manager and disciplinary officer Nancy Arredondo, and she responded by

filing "an exaggerated and utterly unwarranted" disciplinary charge of sexual

harassment against the plaintiff.  Plaintiff believed Arredondo violated the Administrative

Regulation regarding appearance and dress code, i.e., her hair was too long and was

not tied up or worn in a pony tail, and she wore "skin tight white pants."  Plaintiff found

Arredondo's conduct toward plaintiff and other prisoners to be inappropriate on a few occasions "and an obvious attempt to draw sexual attention."  (Docket No. 4 at 8).  For example, shortly after plaintiff arrived at KCCC, Arredondo entered plaintiff's cell as he slept and had him get out of be to sign a form.  At that time, plaintiff was wearing only boxer shorts, and she made him feel uncomfortable.  Plaintiff wrote complaints against Arrendondo to her supervisor (Case Manager Coordinator Reyman), twice in March and again April 2009, in which plaintiff "did not mention Arredondos [sic] meritricious [sic] dress but rather kept it superficial and requested I be assigned a different case manager."  (Docket No. 4 at 9).  Reyman did not respond and left Arredondo as plaintiff's case manager.  Plaintiff subsequently complained to Reyman about Arredondos "vexatious conduct" of constantly waking plaintiff at 6:30 a.m. and disrupting his prayer.  On June 12, 2009, Reyman spoke to plaintiff about Arredondo's conduct and told plaintiff his complaints were given to Arredondo who was mad.

On May 6, 2009, plaintiff spoke with KCCC Investigator Procter about another issue but mentioned Arredondo's clothing and flirtatiousness towards prisoners, some of whom were not even on her case load, and told Procter that Arredondo's deportment should be viewed as a security issue.

Plaintiff "elected to exercise [his] right" and complained directly to Arredondo on May 20, 2009, by writing a complaint letter, which plaintiff handed to another case manager who assured plaintiff she would deliver it to Arredondo personally.  The following morning, "Arredondo in skin tight white pants once again [woke plaintiff] up yelling at [him] about the complaint [he] sent to her."  (Docket No. 4 at 9).  Plaintiff said he would write her up.  Plaintiff then sent several copies of a complaint concerning

these issues to KCCC supervisors, i.e., the Assistant Warden, the Case Manager

Supervisor, the Chief of Security, and the Private Prison Management Unit.  One

recipient, the PPMU Lieutenant, spoke with plaintiff about the complaint and said he

would speak with Arredondo.  In addition, on May 31, 2009, plaintiff filed a Step One

Grievance about Arredondo's dress.

"Arredondo decided to strike back."  (Docket No. 4 at 10).  She retaliated by

accusing plaintiff of sexual harassment.  She did so to raise plaintiff's security level so a

transfer to a high security prison could be justified.  Plaintiff suffered as a result of this

sexual harassment conviction being on his record because it hindered parole and

halfway house consideration.  He had been incarcerated for over eight years and had

no history of sexual harassment.  Arredondo's actions constitute a First Amendment

violation (access to the court and retaliation), an equal protection violation, and a

substantive due process violation.

**Claim Three.**  Plaintiff addressed and sent two appeal forms to defendant

disciplinary hearing officer Lieutenant Phillips, but he refused to process them.  More

specifically, on June 17, 2009, plaintiff handed a sealed envelope with Phillips' name on

it to "Lamle" in the KCCC mail room who said she would put it in Phillips' box.  That

mailing was an appeal pertaining to defendant Gray's charge of "threats."  On June 21,

2009, plaintiff handed segregation Sgt. Meyers a sealed envelope addressed to Phillips

concerning an appeal of defendant Appredondo's charge of sexual harassment.

Plaintiff obtained a written receipt from Sgt. Meyers.  Plaintiff left KCCC the following

day, and while at his new prison, he inquired about the appeals.  His case manager

informed him that no appeals existed.  Plaintiff then submitted a Step One Grievance

against KCCC for obstruction and proceeded with a 106 action in Kit Carson County Court.

During the disciplinary hearings regarding the "threats" and sexual harassment, Phillips denied plaintiff his procedural due process and abused his discretion.  Plaintiff said in both cases that each charge was in retaliation to his complaints, yet Phillips refused to consider plaintiff's claim and convicted plaintiff "of his co-workers [sic] and friends [sic] asinine charges."  (Docket No. 4 at 13).  After the May 25 hearing, plaintiff told Phillips he intended to appeal, and if the verdict was upheld by the Warden, plaintiff would challenge it in court.  Plaintiff "deduce[s] that Phillips with reckless disregard to [plaintiff's] right to access the court unlawfully discarded both appeals."

Two 106 actions in Kit Carson County (case numbers 09-cv-38 and 09-cv-42) were dismissed because of Phillips' adverse actions.  Phillips' failure to follow proper procedure as a hearing officer and lack of impartiality deprived plaintiff of his right to due process and a fair hearing and frustrated plaintiff's access to judicial review and likelihood of having those convictions expunged from plaintiff's record.  Plaintiff does not seek expungement of his disciplinary convictions or a return of any possible good/earned time.

**Claim Four.**  (Claim against defendant S. Heger dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m), 16(f), and/or D.C.COLO.LCivR 41.1 - see Docket Nos. 52 and 55)

**Claim Five.**   On February 20, 2009, plaintiff submitted a Step One Grievance on the Medical Department, but it was never processed.  Plaintiff sent a notice of

unanswered Step One to Grievance Officer DeCesaro.  On March 23, 2009, plaintiff filed a Step One Grievance against defendant Grievance Coordinator Colleen Blake regarding the mishandling of the grievance.  Plaintiff later spoke with Blake about the "lost" Step One, and on March 25, 2009, plaintiff proceeded with Step Two although Step One was not recorded.

Attached to each complaint sent by plaintiff was a "kite" requesting confirmation of receipt.  Blake at first confirmed receipt but then in late May and June of 2009 started ignoring plaintiff's requests for receipts.

On May 2, 2009, plaintiff filed another grievance against Blake for obstructing plaintiff's access to the courts and not following procedures for processing ADA grievances.  Blake again ignored plaintiff's kite requesting confirmation of receipt of that grievance.  On May 11, plaintiff sent Blake a request for information for filing ADA complaints against Medical, which Blake refused to answer.

On May 31, 2009, plaintiff submitted a Step One Grievance regarding Arredondo which Blake failed to process properly.  On June 14, 2009, plaintiff filed a Step One Grievance on Blake and submitted a motion to the Kit Carson County Court seeking injunctive relief regarding Blake not processing plaintiff's grievances.

Blake thwarted plaintiff's access to the court by not properly processing plaintiff's Step One Grievance - KC 08/09-842 (Pl.'s Ex. 4).  Blake received that document, and her refusal to process it prejudiced plaintiff's state case (no. 09-cv-42) and the instant case because the Step One pertained to Arredondo's conduct.

Blake's acts of ceasing to provide plaintiff with "simple confirmation" and failing to process plaintiff's grievance were motivated by plaintiff's filing complaints against Blake,

her co-workers, and friend defendant Gray.

Plaintiff seeks nominal, compensatory, and punitive damages.

## SUMMARY JUDGMENT MOTIONS

Now before the court for a report and recommendation are the Defendants'

Motion for Summary Judgment (Docket No. 82) and the Plaintiff's Cross-Motion for

Summary Judgment (Docket No 87).  The court has very carefully reviewed these

motions (Docket Nos. 82 and 87) as well as the Responses (Docket Nos. 86 and 99),

the Replies (Docket Nos. 97, 98, 106), the court's file, and applicable statutes and case

law.  The court now being fully informed makes the following findings, conclusions, and

recommendations.

Rule 56(a) provides that summary judgment shall be granted "if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party seeking summary

judgment bears the initial responsibility of informing the district court of the basis for its

motion, and identifying those portions of the pleadings, depositions, interrogatories, and

admissions on file together with affidavits, if any, which it believes demonstrate the

absence of genuine issues for trial."  Robertson v. Board of County Comm'rs of the

County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494

(10th Cir. 1992)).  "Once a properly supported summary judgment motion is made, the

opposing party may not rest on the allegations contained in the complaint, but must

respond with specific facts showing the existence of a genuine factual issue to be tried. .

. .  These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule

56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria,
149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).
However, "[i]n order to survive summary judgment, the content of the evidence that the
nonmoving party points to must be admissible. . . .   The nonmoving party does not have
to produce evidence in a form that would be admissible at trial, but '"the content or
substance of the evidence must be admissible."' . . .   Hearsay testimony that would be
inadmissible at trial cannot be used to defeat a motion for summary judgment because
'a third party's description of a witness' supposed testimony is "not suitable grist for the
summary judgment mill."'" Adams v. American Guarantee & Liability Ins. Co., 233 F.3d
1242, 1246 (10th Cir. 2000).

"Summary judgment is also appropriate when the court concludes that no
reasonable juror could find for the non-moving party based on the evidence presented
in the motion and response." Southway, 149 F. Supp.2d at 1273.  "The operative
inquiry is whether, based on all documents submitted, reasonable jurors could find by a
preponderance of the evidence that the plaintiff is entitled to a verdict. . . .   Unsupported
allegations without 'any significant probative evidence tending to support the complaint'
are insufficient . . . as are conclusory assertions that factual disputes exist." Id.;
Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)).
"Evidence presented must be based on more than 'mere speculation, conjecture, or
surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at
1274.  "Summary judgment should not enter if, viewing the evidence in a light most
favorable to the non-moving party and drawing all reasonable inferences in that party's

favor, a reasonable jury could return a verdict for that party." Id. at 1273.

Self-serving affidavits, without support in the record do not create a trial issue of fact. Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995). See Stevens v. Barnard, 512 F.2d 876, 879 (10th Cir. 1975) ("[G]eneralized, conclusory, unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for summary judgment."); American Exp. Financial Advisors, Inc. v. Topel, 38 F. Supp.2d 1233, 1242 (D. Colo. 1999) (noting that conclusory allegations not supported by specific facts cannot defeat a properly supported motion for summary judgment). "At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record." Wells v. Krebs, 2010 WL 3521777, at *2 (D. Colo. Sept. 1, 2010), adopted by, 2010 WL 4449729 (D. Colo. Nov. 1, 2010). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion to summary judgment." Id. (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)).

Plaintiff is proceeding pro se. The court, therefore, reviews the plaintiff's pleading and other papers liberally and holds them to a less stringent standard than those drafted by attorneys. Trackwell v. United States Government, 472 F.3d 1242, 1243 (10th Cir. 2007). See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint to less stringent standards than formal pleadings drafted by lawyers). However, a pro se litigant's conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume

10

that a plaintiff can prove facts that have not been alleged or that a defendant has violated laws in ways that a plaintiff has not alleged.  <u>Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).  <u>See Whitney v. New Mexico</u>, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf); <u>Drake v. City of Fort Collins</u>, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues).  "The plaintiff's *pro se* status does not entitle him to application of different rules."  <u>Wells v. Krebs</u>, 2010 WL 3521777, at *2 (D. Colo. Sept. 1, 2010).

Defendants move for summary judgment on the following grounds: (1) plaintiff fails to allege any facts that establish any liability on the part of Corrections Corporation of America ("CCA"); (2) plaintiff's claim for due process violations against Gray, Arredondo, and Phillips fail as a matter of law; (3) plaintiff is not pursuing his equal protection claims against Gray and Arredondo; (4) plaintiff cannot put forth sufficient facts and evidence to maintain his claims for access to the courts against Gray and Arredondo; (5) plaintiff's claims of retaliation against Gray and Arredondo attempt to collaterally attack his valid COPD convictions and should be dismissed; (6) plaintiff fails to establish that Phillips or Blake personally participated in any of the alleged conduct that is the basis of his claims; (7) plaintiff's claims against Phillips are precluded by the doctrines of res judicata and collateral estoppel; and  (8)[1] plaintiff's claims against

---

[1]Defendants also numbered this argument as number VII.

11

Phillips and Blake must be dismissed under the Prison Litigation Reform Act ("PLRA")

for failure to exhaust administrative remedies.

In his Response to the defendants' motion, plaintiff clarifies that he is not raising

a claim against CCA itself, and thus defendants' first argument that the claims against

CCA should be dismissed is moot.  (Docket No. 86 at 2).  In addition, plaintiff states:

> To save the court valuable time I state the following: the sole claim I
> specify in my section 1983 complaint against defendants Gray and
> Arredondo is retaliation.  Defendants Phillips and Blake are being sued for
> depriving me of my right to access the court.  So defendants [sic]
> arguments #s 1 2 3 and 4 shall not be an issue for his honor to address.  I
> must concede to simply failing to "state a cognizable claim for the equal
> protection, substantive due process etc claims defendant argue against.
> Again, my claims are retaliation and access to the court.

(Docket No. 86 at 2).

In his cross-motion for summary judgment, plaintiff essentially merely reiterates

some of the averments he made in his Prisoner Complaint.

It is unnecessary to address defendants' various bases for summary judgment

inasmuch the court concludes that no reasonable juror could find for the plaintiff on his

remaining claims based on the evidence presented in the motion papers.

### **Retaliation**

Plaintiff has failed to present evidence creating a triable factual issue as to his

retaliation claims against Gray and Arredondo.  Plaintiff may make a showing of

retaliation by demonstrating the following: 1) he engaged in constitutionally protected

activity; 2) defendants' actions caused plaintiff "to suffer an injury that would chill a

person of ordinary firmness from continuing to engage in that activity;" and 3)

defendants' "adverse action was substantially motivated as a response to the plaintiff's

12

exercise of constitutionally protected conduct." <u>Shero v. City of Grove, Okla.</u>, 510 F.3d

1196, 1203 (10th Cir. 2007) (citing <u>Worrell v. Henry</u>, 219 F.3d 1197, 1212 (10th Cir.

2000)).  The third element requires that the plaintiff show that defendants' retaliatory

motive was a "but for" cause of the defendants' actions.  <u>Smith v. Maschner</u>, 899 F.2d

940, 949-50 (10th Cir. 1990).  "An inmate claiming retaliation must allege *specific facts*

showing retaliation because of the exercise of [his] constitutional rights."  <u>Peterson v.

Shanks</u>, 149 F.3d 1140, 1144 (10th Cir. 1998) (quotation omitted) (emphasis in original).

     Here, plaintiff has not met the met the strict "but-for" standard for causation with

regard to his retaliation claim against Gray.  He alleges she retaliated against him for

complaints he made against her and for submitting a Notice of Intent to name her in a

civil action in this court.  Her retaliation consisted of her charging him with making

"threats."  This charge was based upon a letter plaintiff sent to Gray which stated:

> HSA Gray
>
>      Hello!  How are you?  I truly trust this message finds you in the
> "soundest" of health and high spirits.
>
>      I'm sure by now you know I've kept my promise to file a federal law
> suit against both Brill and Northrup (the grusome [sic] twosome).
>
>      I'm equally sure you are wondering: "What about me?  Why did Mr.
> Allen leave me out?" [Smile]
>
>      You needn't be alarmed for I have not forgotten you.  Have no fear
> dear I've go you in my sights.
>
>      <u>PLEASE!</u> Try to be patient.  I understand you are anxious...feeling
> left out.  You can rest assured that I'll get to you before long.
>
>      Take care.  And forgive me for the delay.
>
>      "Bye-bye now!"

Sincerly [sic] yours,

(Docket No. 88 at 5).   In addition, he gave her a paper with the caption for his action in

this court (Civil Action No. 09-cv-00741-CMA) in which the text reads: "That is the

current listing I'm gonna see if I cant [sic] squeeze you in between Brill and Northrup

thereby giving you second billing.   I'm sorry but Hoyt must stay on top."   (Docket No. 88

at 6).

Gray wrote up an Incident Statement dated May 6, 2009, in which she stated:

> On the above date and time, I received a letter through internal mail from
> inmate Allen, Shawn, DOC # 113014.   I felt very intimated [sic] by the
> manner of the letter.   He stated "You needn't be alarmed for I have not
> forgotten you.   Have no fear Dear I've got you in my sights".   By these
> words, I felt that the inmate was saying that he had a special plan to do
> intention [sic] harm to me.   He stated at one point in the letter, "You can
> rest assured that I'll get to you before long".   I immediately wondered what
> this meant.   I questioned what his intent was with that statement.   I
> immediately began to wonder if I would be safe around this inmate if I
> were to encounter him.   I sensed an underlying anger that was displayed
> in his synical [sic] manner of his writing.   I thought of the witch in the
> Wizard of OZ.   I felt like Dorothy when the witch said, "I'll get you and your
> little dog too".   The final part of the letter that read, "....I'm gonna see if I
> can squeeze you in between Brill and Northrup".....   I felt that he was
> insinuating physical harm by possibly squeezing me.

(Docket No. 88 at 7).

Plaintiff "pled not guilty then stated I only threatened to sue her Mrs Gray is

retaliating towards me."   (Docket No. 82-2 at 1).   However, he was found guilty of Class

II, Rule 13, Threats, and the specific evidence relied upon to reach that finding was: "A

letter from Allen to Mrs Graystating [sic] several things such as 'you neednt [sic] be

alarmed for I have not forgot you have no fear dear I have you in my sights' and you can

rest assured that I'll get to you before long Mrs Gray felt threatened by this letter.   There

is a statement from Mrs Gray."   (Docket No. 82-2 at 1).   The penalty imposed was

twenty days in segregation.  (Docket No. 82-2 at 1).

Plaintiff claims he merely sent Gray an Intent to Sue and she retaliated by charging him with threats.  Plaintiff, however, did not merely advise Gray that he intended to add her to the lawsuit.  Instead, the actual language plaintiff used, including what was noted in the findings at the disciplinary hearing, could readily be construed as threatening.  Therefore, plaintiff has not shown that "but for" the retaliatory motive, he would not have been charged with "threats."  An inmate is not "inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he is engaged in protected activity."  Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998).

With regard to Arredondo, plaintiff admittedly sent a letter dated May 20, 2009, to her, which stated:

Salutations!  A change would do you good.

Are you at all familiar with the phrase "constructive criticism?"  If not: it is when one informs another of a shortcoming or a fault and it may very well come off as criticism.  However.  If the party in receipt of such properly takes the "criticism" under advisement and apply it so as to rectify said faultiness...it can indeed be constructive and productive. [Smile].  You may say: "Allen it's not your place to advise me".  I would simply beg to differ-as it were.

To exercise prudence and judiciousness is in a sence [sic] to display both professionalism and temperance.  I compliment you for your "appearance" of the aforementioned virtues.  Monday-5.20.09-you for the first time since I've been here-had that look; that apperance [sic].  However, your continual choice to walk around a mens prison wearing skin tight white pants is an absolutely obvious attempt to draw sexual attention to yourself.  I assure you both staff and prisoner see such for what it is.  It's a desperate look.  It provokes negative attention.  It would behoove you to tone it down. . .  To respect yourself as a woman so others might perceive you as a later.  You are much more than "that".  Besides you are simply too old and overweight.  I almost came to your defense earlier this month

when a staff and prisoner spoke of you...let us just say it was derogatory.
But I held my tongue.  I see other case managers conduct themselves
contrary to yourself...as a consequence they exact more respect.  To be
and feel attractive is a wonderful thing.  You are a smart woman and have
a beautiful personality.  Don't [sic] let said positive traits fall by the
wayside, as it were on account of your inappropriate apperal [sic] . . . it's
"totally tacky" not to mention oncongruous [sic].  Towards of 90% of men
are sex craved dogs.  "**PLEASE**".  With sugar on top.  Don't [sic] feed into
it.

                                     With all due respect,

"For your time I thank you!"

(Docket No. 82-8 at 2) (ellipses in original).

Plaintiff also submitted a Step One Grievance against Arredondo which stated:

Case manager "Arredondo" has continued to display herself in an
inappropriate manner.  The skin tight white (or any color for that matter)
pants she parades around in are outright outrageous.  I implored her to
"change" and be conservative and respectful.  To no avail.  So I've
brought this issue to the <u>Wardens</u> and <u>PPMVS</u> attention.  My religious and
moral tenets actuated this grievance.  The above mentioned lack of viture
[sic] and tactfulness has made it most impossible for me to respect her.
For she does not respect herself.  Indubitably.  I am now and have been
averse towards my case manager.  Such aversion has rendered me reluct
[sic] at seeking much needed case manager services.  I simply cant [sic]
tolerate such cheap. meretricious conduct.  I'd like to document my
concern of said individuals [sic] mishandling of my files due to my
complaint.  To remedy I must be promptly removed from Arredondos [sic]
case load.  Perhaps assigned to "Rogers?"  No step 2 shall be needed.
Transfer me out of KCCC...optional remedy.

(Docket No. 4 at 24).

Plaintiff was charged with sexual harassment (Rule 24.5).  The Notice of

Charge(s) stated:

On May 27, 2009 at approximately 0815 hours, Case Manager Arredondo
received a white plain envelope addressed to her from Inmate Shawn
Allen #113014.  This envelope was addressed to C/M Arredondo with a
two page hand-written letter for her dated May 20, 2009.  This letter was
written on the back of an orange in color Legal Access Program Request

16

> sheets.  In this letter Inmate Allen states this letter is to provide her with
> "constructive criticism" about her 'appearance.'  Excerpts from this letter
> are as follows: "Monday - 5-2--09 - You for the first time since I've been
> here had that look; that appearance.  However, your continual choice to
> walk around a mens prison wearing skin tight white pants is an absolutely
> obvious attempt to draw sexual attention to yourself.  To be and feel
> attractive is a wonderful thing.  You are a smart woman and have a
> beautiful personality.  Upwards of 90% of men are sex craved dogs.
> "Please" with sugar on top, don't feed into it."
>
> Upon receiving and reading this letter C/M Arredondo felt very insulted
> and the comments made were sexually inappropriate.
>
> When Inmate Allen #113014 issued this letter to C/M Arredondo he
> committed the COPD offense of Class II. Rule 24.5; Sexual Harassment
> as a direct result of his written statements of a sexual nature and makes
> demeaning references to gender or derogatory comments about body or
> clothing.

(Docket No. 82-9 at 5).  The Disposition of Charges states that plaintiff "pled not guilty

then stated we was taking his right to freedom of speech."  (Docket No. 82-8 at 4).

Plaintiff, however, was found guilty of "sexual harrassment [sic] he made derogetory

[sic] remarks about her clothing."  (Docket No. 82-9 at 6).  "The letter that was written to

c/M Arredondo speaks of her wearing tight clothes."  (Docket No. 82-9 at 6).  The

penalty imposed was 15 days of segregation.  (Docket No. 82-9 at 6).

The Code of Penal Discipline ("COPD") defines the violation of "Sexual

Harassment" as follows:

> (24.5) **Sexual Harassment**:  **An offender commits this non-contact
> offense when he subjects another person to** verbal or **written statements** or
> gestures of a sexual or romantic nature, including but not limited to:
>
> (a) He uses obscene or profane language, **makes** demeaning references
> to gender, or **derogatory comments about body or clothing**, or,
>
> (b) Makes sexually harassing gestures, or,

17

(c) Makes threats of physical force or improper pressure for sexual acts, or requests for sexual acts, or

(d) Displays his/her anus, genitals, or breasts (female) to another person, or

(e) Masturbates in the presence or direct vision of another person.

(Docket No. 82-14 at 11-12) (emphasis added).

Plaintiff claims that he was "severely punished" "for having engaged in the aforementioned First Amendment rights." (Docket No. 87 at 7). Plaintiff's First Amendment claim, however, fails as a matter of law because his comments about Arrendono was not protected conduct. "Plaintiff does not have an unfettered right to insult or challenge the authority of prison officials." Denson v. Maufeld, 2010 WL 3835834, at * (D. Colo. May 19, 2010) (citing Georgacarakos v. Wiley, 2010 WL 1291833, at *10 (D. Colo. Mar. 30, 2010) (noting that conduct which does not comply with prison disciplinary rules, even if engaged in for purposes of exercising an inmate's First Amendment rights, is not subject to protection); Watkins v. Kasper, 599 F.3d 791, 799 (7th Cir. 2010) (noting that prisoner speech which was false and insubordinate was not protected); Lewis v. Randle, 66 Fed. Appx. 560, 562 (6th Cir. May 23, 2003) (noting that prisoner's letter of complaint to warden "arguably was not constitutionally prtected"); Wilson v. Budgeon, No. 3:05-2101, 2007 WL 464700, at *6 (M.D.Pa. Feb. 13, 2007) (holding that inmate's argument with prison official was not protected conduct); Brown v. Conagra Food Ingredients Co.., 07-cv-01108-MSK-KMT, 2008 WL 5101731, at *9 (D. Colo. Dec. 1, 2008) (noting that complaining to one's superior about rude treatment "is insufficient to constitute protected conduct")). Plaintiff's statements regarding Arredondo clearly included derogatory comments regarding her body or clothing and

thus fell within the DOC regulations regarding sexual harassment.

The regulation proscribing such conduct is reasonably related to legitimate penological goals and thus does not impinge on an inmate's constitutional rights.  See Turner v. Safley, 482 U.S. 78, 89 (1987).

It is thus recommended that summary judgment enter for defendants Gray and Arredondo and against the plaintiff.

### Claims Against Blake and Phillips

With respect to plaintiff's First Amendment denial of access to the courts claims against defendants Blake and Phillips, plaintiff must show that the defendants' actions resulted in "actual injury" by frustrating, impeding, or hindering his efforts to pursue a non-frivolous legal claim concerning his conviction or conditions of confinement.  See Gee v. Pacheco, 627 F.3d 1178, 1191 (10th Cir. 2010); Wardell v. Duncan, 470 F.3d 954, 959 (10th Cir. 2006); Rainey v. Morris, 2012 WL 769518, at *1 (D. Colo. Mar. 8, 2012).  "Conclusory allegations of injury in this respect will not suffice."  Wardell, 470 F.3d at 959 (citing Cosco v. Uphoff, 195 F.3d 1221, 1224 (10th Cir. 1999)).

In Claim Five, plaintiff's only claims of "actual injury" caused by defendant Grievance Coordinator Blake is that Step One Grievance KC 08/09-842 concerning Arredondo (referred to by plaintiff as Exhibit 4) was not processed by Blake, causing plaintiff's state case, action no. 09CV42, to be dismissed.  (See Prisoner Complaint, Docket No. 4 at 22-23, ¶¶ 4, 7).   Defendants correctly note, however, that Officer T. Delgado received that grievance, not defendant Blake.  (Docket No. 4 at 24).  Plaintiff has made absolutely no showing that Blake had any personal involvement with the processing of this grievance.  "Evidence presented must be based on more than 'mere

speculation, conjecture, or surmise' to defeat a motion for summary judgment."

Southway, 149 F. Supp.2d at 1274.  Therefore, summary judgment should enter for

defendant Blake on this claim.

Plaintiff likewise has failed to establish that defendant disciplinary hearing officer

Lieutenant Phillips personally participated in any of the alleged conduct that is the basis

for the plaintiff's denial of access to the courts claim in Claim Three.  Plaintiff avers in

that claim that he addressed and sent two appeal forms to Phillips, but he refused to

process them.   More specifically, plaintiff claims that on June 17, 2009, he handed to

mailroom staffer Lamle a sealed envelope with Phillips' name written.  That envelope

purportedly contained an appeal concerning defendant Gray's charge of threats.

Thereafter, on June 21, 2009, plaintiff handed Segregation Sergeant Meyers another

sealed envelope addressed to Phillips which contained an appeal concerning defendant

Arredondo's charge of sexual harassment.  Phillips was the disciplinary hearing officer

on the charges against plaintiff for threats and sexual harassment.  Plaintiff "deduce[s]"

that Phillips discarded both appeals.  (Docket No. 4 at 14).  According to plaintiff, his

106 actions (case numbers 09-CV-38 and 09-CV-42) in Kit Carson County were

dismissed because of Phillips' adverse actions.

Plaintiff, however, has made no showing that Phillips ever received the two

appeals.  Plaintiff merely "deduces" that Phillips received them.  Plaintiff testified at his

deposition he does not have any direct knowledge that Phillips had ever received either

of plaintiff's appeals.  (Docket No. 82-1 at 9, lines 4-7).  In fact, in one of the 106

actions, the Colorado Court of Appeals found that:

   there was no evidence in the record that plaintiff filed an administrative

appeal of his COPD conviction.  Defendants filed an affidavit with their motion to dismiss, attesting that appeal forms are logged in as soon as they are received from an inmate in the ordinary course of business and there was no record in the log that plaintiff had submitted an appeal.  The exhibits submitted by plaintiff do not support his contention that he filed an appeal.  None of the exhibits substantiates that plaintiff filed an administrative appeal of his disciplinary action.  Further, even assuming that plaintiff's contention that he mailed the appeal form to the hearing officer is true, plaintiff did not follow the correct procedure to file the appeal, which requires that it be forwarded to the warden, director, or designee.  *See* DOC Admin. Reg. 150-01, § IV(E)(3)(s)(1).  Because there was no evidence that he appealed his COPD conviction, we conclude that the district court properly found that plaintiff failed to exhaust his administrative remedies and properly dismissed his complaint for lack of subject matter jurisdiction.

(Docket No. 82-7 at 7).

Just like plaintiff's claim against defendant Blake, plaintiff's claim against Phillips is based merely upon speculation, conjecture, or surmise which is not sufficient to defeat a motion for summary judgment."  Southway, 149 F. Supp.2d at 1274

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Defendants [sic] Motion for Summary Judgment (Docket No. 82) be granted.  It is further

**RECOMMENDED** that the Plaintiffs [sic] Cross-Motion for Summary Judgment (Docket No. 87) be denied.

If the court accepts and adopts the above recommendations, then it is further

**RECOMMENDED** that the court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from such order would not be taken in good faith and therefore *in forma pauperis* status be denied for the purpose of appeal.  See Coppedge v. United States, 369 U.S. 438 (1962).  If such a certification is made, and the plaintiff files a notice of

appeal, he would then be required to pay the full $455 appellate filing fee or file a

motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth

Circuit within thirty days in accordance with Fed. R. App. P. 24.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2),**

**the parties have fourteen (14) days after service of this recommendation to serve**

**and file specific written objections to the above recommendation with the District**

**Judge assigned to the case.  A party may respond to another party's objections**

**within fourteen (14) days after being served with a copy.  The District Judge need**

**not consider frivolous, conclusive, or general objections.  A party's failure to file**

**and serve such written, specific objections waives *de novo* review of the**

**recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53**

**(1985), and also waives appellate review of both factual and legal questions.**

**<u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley</u>**

**<u>v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**


Date: May 8 , 2012                              s/ Michael J. Watanabe
      Denver, Colorado                         Michael J. Watanabe
                                                        United States Magistrate Judge